OPINION OF THE COURT
Lewis R. Friedman, J.
The parties in this case have submitted a stipulated issue to *393 the court. The parties have submitted affidavits and memoranda of law so that the papers are the equivalent of a motion for summary judgment on the single limited question. The issue for resolution is whether plaintiff (Wife) is barred from equitable distribution of defendant’s (Husband) pension and retirement plans as a result of her execution of a prenuptial agreement.
The relevant facts are simple. On December 18, 1989 the parties executed a prenuptial agreement (the Agreement). Each party waived rights in the past and future earnings of the other. There is specific language defining what marital property the parties may acquire. They each waived rights in the other’s pension. Section 10, at issue here, provides:

"Anne’s Specific Waiver of Pension Rights.

"Pursuant to paragraphs 4, 6, and 8 above, Anne has hereby waived any claim to, inter alia, William’s present or future pension, profit sharing or retirement benefits. In further clarification of that waiver, Anne hereby waives and releases any and all right and claim that she may have in and to any participation or interest that William may now or in the future have in any retirement plan, including but not limited to any defined benefit plan, defined contribution plan, money purchase plan, Keogh (H.R. 10) Plan, and individual retirement account. Anne hereby consents to the election by William to waive a qualified joint and survivor annuity form of benefit and a qualified preretirement survivor annuity form of benefit under any plan of deferred compensation to which 26 U.S.C. 401 (a) (11) 1055 (b) (1) of the Employee Retirement Income Security Act of 1974 (ERISA) shall apply and in which Anne currently is or hereafter may be deemed a vested participant within the meaning of 26 U.S.C. 417 (f) (1) of the Code and Section 29 U.S.C. 1055 (h) (1) of ERISA. Anne further consents to the current and future designation by William of beneficiaries other than Anne under any of such plans (and to any revocation or modification of such designations), including any of such plans referred to in 26 U.S.C. 401 (a) (11) of the Code or 29 U.S.C. 1055 (b) (1) of ERISA. Anne hereby acknowledges that she understands the effect of such elections by William and she consents thereto. To the extent that the law shall require any additional documentation to confirm the consents set forther [sic] herein, Anne agrees to execute and deliver the same at the request of William.”
The parties were married on December 21, 1989. This action was commenced October 3,1993.
*394 It appears that Husband has an Individual Retirement Account (IRA) rollover account at First Albany Corp. which was transferred to Wertheim Schroeder. No additions were made to the account during the marriage and all increases in value were due to a third-party money manager. During the marriage Husband participated in a NatWest Saving Investment Plan and a NatWest Retirement Plan. The disputed marital property has an agreed value of $242,229.36. Wife did not execute and consent to waive her rights to the retirement plans during the marriage. On December 14, 1993, two months after the action commenced, Husband, through his current counsel, requested a waiver; Wife refused to execute the documents.
There is no doubt that Federal law, ERISA, governs the pension and retirement plans at issue here (Pilot Life Ins. Co. v Dedeaux, 481 US 41, 45-46). ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section [1003 (a) of this title]” (29 USC § 1144 [a]).
Pursuant to ERISA every plan must provide a joint and survivor annuity to the spouse on the "annuity starting date” or a "qualified preretirement survivor annuity” if the spouse dies before that date (29 USC § 1055 [a] [1], [2]). The statute as relevant here provides that a person may waive those rights if (i) "the spouse of the participant consents in writing to such election,” (ii) the consent "expressly permits designations by the participant without any requirement of further consent by the spouse” and (iii) the spouse’s consent is properly acknowledged (29 USC § 1055 [c] [2] [A]; 26 USC § 417 [a] [2] [A]). The issue presented by Wife here is that she was not a "spouse” within the meaning of ERISA when she executed the Agreement. (The parties appear to agree that the language of the Agreement otherwise complies with ERISA.)
In the leading case on this point, Hurwitz v Sher (982 F2d 778 [2d Cir 1992], affg 789 F Supp 134 [SD NY 1992], cert denied 508 US 912), the court found the congressional intent in the Retirement Equity Act of 1984 (Pub L 98-397, 98 Stat 1426), which amended the ERISA sections involved here, was to insure that long-term homemakers’ rights to their spouses’ retirement benefits were secured and that that logic required literal application of the law regardless of the facts of the particular marriage (982 F2d, at 781). In Hurwitz the District Court had specifically held that only a "spouse”, not a "fiancee”, could waive ERISA rights (789 F Supp, at 137). The Second Circuit specifically "reservefd] judgment on whether *395 the antenuptial agreement might have operated as an effective waiver if its only deficiency were that it had been entered into before marriage” (982 F2d, at 781, n 3). Yet, the court specifically upheld the Treasury Regulations interpreting these provisions and found that they " ' "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes” ’ ” (982 F2d, at 782; Bingler v Johnson, 394 US 741, 750). The Treasury Regulations, in question and answer form, provide:
"Q-28 Does consent contained in an antenuptial agreement or similar contract entered into prior to marriage satisfy the consent requirements of section 401 (a) (11) and 417 * * *
"A-28 No. An agreement entered into prior to marriage does not satisfy the applicable consent requirements.” (982 F2d, at 782.)
This court concludes that the Second Circuit would most likely follow the District Court in Hurwitz and find that prenuptial agreements alone may not waive ERISA rights.
The rule that a party may not waive ERISA rights in a prenuptial agreement appears to have been followed by a number of Federal courts (Pedro Enters. v Perdue, 998 F2d 491, 494 [7th Cir 1993]; Nellis v Boeing Co., 1992 WL 122773 [D Kan 1992]; Zinn v Donaldson Co., 799 F Supp 69, 73 [D Minn 1992]; cf., Howard v Branham & Baker Coal Co., 968 F2d 1214 [6th Cir 1992]). The Sixth Circuit in an opinion which is not officially reported has, however, questioned the Treasury Regulation (Callahan v Hutsell, Callahan & Buchino, 14 F3d 600 [6th Cir 1993], vacating 813 F Supp 541 [WD Ky 1992]). A State appellate court has rejected the Treasury Regulation and the literal application of the statute (In re Estate of Hopkins, 214 Ill App 3d 427, 574 NE2d 230 [1991]). However, that decision is based on a flawed reading of a Federal case (Fox Val. & Vicinity Constr. Workers Pension Fund v Brown, 897 F2d 275 [7th Cir 1990]). Fox Val. dealt with the issue of the validity of divorce agreements and had only turned to State law to determine that question because there was no alternative source of law. This court, following the same line of authority as every other case analyzing Hopkins, sees no basis to follow Hopkins.
This court concludes that the Federal law precludes giving effect to a prenuptial waiver of spousal rights under ERISA. This does not however end the inquiry. Husband contends that there is an independent contractual right to have Wife execute "any additional documentation to confirm the consents set
*396 forther [sic] herein.” In this regard Husband finds support in Callahan (supra). In that case there was a provision similar to the one at bar, requiring the execution of conforming documents. There was some proof in the record in Callahan that prior to the husband’s death he had requested that wife sign an ERISA waiver but that she had not executed any documents before his death. The Sixth Circuit remanded for trial on the issue of whether a waiver document was presented to the wife for signature and hinted in dicta that if it had been, wife would have been required to sign the document. The Sixth Circuit impliedly holds that it does not violate Federal law to hold a party to the language of a contract she signed.
This court will not now resolve as a general matter the issue presented by Callahan (supra). Here it is uncontested that the request to sign the document was made after the commencement of this action, and had not been made during the preceding four years. The court concludes that it would be contrary to equity to permit a spouse to invoke for the first time during the divorce action a contract giving him the right to designate beneficiaries of his pension plan.
The court answers the question posed by the parties by holding that the Agreement, under these circumstances, does not bar an equitable claim of the disputed property.