**Robert HOLZ, Appellee,**

v.

**Joan HOLZ, Appellant.**

**Robert Holz, Appellant,**

v.

**Joan Holz, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 13, 2004.

Filed May 24, 2004.

Joseph P. Kerrigan, Philadelphia, for Robert Holt.

Richard K. Doty, Philadelphia, for Joan Holz.

Before: BENDER, BECK and KELLY, JJ.

BENDER, J.

¶ 1 Joan Holz (Wife) appeals and Robert Holz (Husband) cross-appeals from the order entered June 25, 2003, whereby the court vacated a previously issued order dated May 2, 2002, enforced the parties' property settlement agreement (PSA) except with regard to Wife's survivorship interest in Husband's pension plan, and granted a decree in divorce. Both parties assert arguments concerning the validity of their agreement in connection with Husband's pension plans and the award of attorney's fees to Wife. For the reasons that follow, we reverse in part, vacate in part and remand.

¶ 2 The following facts are gleaned from the parties' stipulation of facts, two trial court opinions, dated May 2, 2002 and June 25, 2003, a prior decision of this Court, *Holz v. Holz*, 778 A.2d 741 (Pa.Super.2001) (unpublished memorandum) (*Holz I* ), and our own review of the certified record. Husband and Wife were married in 1957, and separated in 1986. After Wife filed a divorce complaint in 1986, the parties entered into a PSA, dated February 24, 1988, which contained the following provision:

> Wife waives all claims against Husband's pension and work plans.

PSA at ¶ 10 (Reproduced Record (RR) at 27). The 1986 action was ultimately dismissed for lack of prosecution.

¶ 3 In 1999, Husband filed the present divorce action in which he sought court approval of the 1988 PSA. Wife responded, asserting that the PSA did not make fair and reasonable provisions for her, that Husband did not fully disclose his assets at the time they entered into the PSA, and that she signed the PSA under duress. Most important to the present appeal, Wife challenged the validity under

ERISA[1] of the above-quoted waiver of pension benefits contained in ¶ 10 of the PSA. After argument and hearing, the trial court entered an order, dated May 7, 1999, granting Wife the right to challenge the validity of the PSA on the basis of non-disclosure, misrepresentation and/or duress and directing that an evidentiary hearing be held to determine the validity of Wife's defenses to the PSA. However, the May 7th order was silent as to the alleged invalid waiver/ERISA issue. Wife then filed a declaratory judgment action in United States District Court and ultimately obtained an order declaring the waiver invalid.[2] As a result of the district court's determination, Wife sought to enforce her rights to the pension without establishing non-disclosure, misrepresentation and/or duress as set forth in the May 7th order.

¶ 4 Thereafter, Husband filed a contempt petition, alleging that because Wife was seeking an equitable distribution hearing based on the federal court's decision, she was in contempt of the trial court's May 7th order. On June 7, 2000, the trial court ruled in Husband's favor, ordering Wife to pay $500 in attorney's fees and to refrain from seeking an equitable distribution hearing until she proved non-disclosure, misrepresentation and/or duress in connection with the PSA. Wife appealed from the June 7th order to this Court, which resulted in a quashal due to the interlocutory nature of the appeal. *See* *Holz I, supra.* In the interim, Husband retired and his pension was placed in pay status. Husband elected a joint and 50% survivor benefit.[3] However, a court order, dated April 30, 2001, which incorporated a master's interim report, enjoined Husband from distributing the 401(k) assets.

¶ 5 Meanwhile, on April 24, 2001, Wife requested a hearing to determine the validity of the PSA as required by the May 7, 1999 order that would be followed by a hearing on equitable distribution, if necessary. However, the master determined that the federal court's order superceded the May 7, 1999 order and this Court's quashal, both of which provided Wife with an opportunity to void the agreement on the basis of non-disclosure, misrepresentation and/or duress. Thus, only an equitable distribution award was recommended by the master in his report. In response to Husband's exceptions, the trial court requested that the parties enter into a stipulation of facts. As part of the stipulation, Wife indicated that she did not intend to challenge the PSA on the basis of non-disclosure, misrepresentation and/or duress. The court then entered an order and opinion dated May 2, 2002, invalidating the PSA and indicating that it would follow the federal court's decision holding that Wife's waivers in the PSA to Husband's pension benefits were void under ERISA.[4] Thus, the matter was scheduled for a hearing to determine issues of equitable distribution and counsel fees.

¶ 6 In its opinion dated May 2, 2002, the trial court discussed the parties' positions

1. Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461.

2. The federal district court's order dated February 3, 2000, declared that the Wife's waivers of her rights to Husband's pension and 401(k) benefits were void and of no effect under ERISA. This decision was affirmed by the Third Circuit Court of Appeals without opinion on September 15, 2000. *Holz v. Holz*, No. 99–4918 (3d Cir.2000).

3. Husband's monthly benefit of $2,158.78 was to be paid until his death and then, if Wife survived Husband, she would receive 50% or $1,079.39 per month for the remainder of her life. *See* Stipulation of Facts, ¶ 16, (RR at 258).

4. At Husband's request, the trial court certified the question of the validity of the PSA for immediate appeal. However, this Court denied review.

with regard to which prior court orders it was required to follow, *i.e.*, the May 7, 1999 and June 7, 2000 orders that required proof of non-disclosure, misrepresentation and/or duress or the September 15, 2000 Third Circuit Court of Appeals decision voiding Wife's waiver. Recognizing that the federal decision was the most recent, the trial court found it to be the law of the case. The court explained its reasoning as follows:

> This court agrees with [W]ife's position that if the waivers of her marital property interest in Husband's pension and 401(k) plans are invalid under federal law, there must be an equitable distribution hearing for these assets only.

> The more problematic issue is whether or not the invalid waiver under ERISA only applies to wife's survivorship interest in the pension plans of Husband. Husband concedes that Wife has not waived her survivorship interest in the plan which needs to be valued and equitably divided pursuant to *Palladino v. Palladino*, 713 A.2d 676 (Pa.Super.19[9]8).

> Husband argues that § 1055 of ERISA, 29 U.S.C. § 1055, is limited to only survivorship benefits and therefore does not control the purported waiver by [W]ife of her equitable distribution rights to these plans.

> . . . .

> Judge Bartle [District Court Judge] held that, "...we declare that any purported waiver of her rights to the benefits of Husband's pension and 401(k) plan are void and of no effect." ... This conclusion was reached based upon 29 U.S.C. § 1055(c)(2)(A)(iii) since the waivers were not signed before a notary public or plan representative.

> It is noteworthy that Judge Bartle, as affirmed without opinion by the Third Circuit, did not distinguish between survivor benefits and other pension benefits.

> From a review of the applicable caselaw, it appears that § 1055(c) waivers apply only to fact patterns involving surviving spouses and former spouses of deceased participants. *See Boggs v. Boggs*, 520 U.S. 833, 843 [117 S.Ct. 1754, 138 L.Ed.2d 45] (1997); *Egelhoff v. Egelhoff*, 532 U.S. 141 [121 S.Ct. 1322, 149 L.Ed.2d 264] (2001); *Lasche v. Lasche Profit Sharing Plan*, 111 F.3d 863 (11th Cir.1997).

> However, this court is constrained in the interpretation and applicability of a federal statute to follow decisions of our Third Circuit. *Werner v. Plater–Zyberk*, [799 A.2d 776] (Pa.Super.2002)[, *appeal denied*, [569 Pa. 722] 806 A.2d 862 (Pa.2002)]. Accordingly, this court holds that the waiver of Husband's pension and 401(k) plans is invalid and those assets are exposed to equitable distribution under the Divorce Code.

Trial Court Opinion, 5/2/02, at 2–3.

¶ 7 Finally, a hearing was held on April 2, 2003. Although no testimony was taken, the parties submitted various documents, including a fee certification from Wife's attorney in the amount of $72,850, with a later amendment that brought the fee total up to $78,475. However, before the trial court issued a final order in the matter, this Court filed an opinion that appeared to directly impact the decision here. *See Sabad v. Fessenden*, 825 A.2d 682 (Pa.Super.2003).[5] As a result, the trial court

---

5. The *Sabad* court indicated that spousal rights under ERISA are limited to survivor benefits, and that likewise the restrictions on waiver of those rights are again limited solely to survivor benefits. *Id.* (relying on *Edmonds v. Edmonds*, 184 Misc.2d 928, 710 N.Y.S.2d 765 (2000)). The *Sabad* court explained its reasoning by quoting in large measure from

requested briefs from the parties, discussing the impact of the *Sabad* decision on the instant case. The trial court, with reliance on *Sabad*, then vacated its May 2, 2002 order that invalided Wife's waiver, and ordered instead that the parties' PSA "shall control the disposition of the economic claims of the parties except for [Wife's] survivorship interest in [Husband's] pension plan...." Trial Court Order, 6/25/03 (RR at 352). Specifically, the court denied Wife's claim for equitable distribution of the marital portion of Husband's pension and 401(k) plans, but awarded Wife "100 percent of her survivor benefits to [Husband's] pension plan...." *Id.* Additionally, the court awarded counsel fees to Wife in the sum of $20,000.

¶ 8 Wife now appeals to this Court and raises the following issues for our review:

A. Did the court below err as a matter of law when it decreed "the agreement of the parties entered February 24, 1988 shall control the disposition of the economic claims of the parties except for [Wife's] survivorship interest in [Husband's] pension plan and counsel fees that were not waived," thereby overruling a prior federal court order voiding any waiver, and denying [W]ife's claim for equitable distribution of the marital portion of [H]usband's ERISA qualified pension plans?

B. Did the court below err in failing to recognize the supremacy clause of the United States Constitution by ignoring the applicability of federal law to qualified pension plans?

C. Did the court below err in not recognizing the federal court order as res judicata?

D. Did the court below err in considering a *Palladino* type credit of a 50% survivorship interest, because as a matter of fact and law, *Palladino* does not apply to this case?

E. Did the court below err as a matter of law, and abuse its discretion, by not awarding reasonable counsel fees, expenses, expert fees, and costs of suit?

Wife's brief at 4.

¶ 9 Husband filed a cross-appeal and raises the following issues for our review:

the *Edmonds* opinion. We also find the following discussion from *Edmonds* enlightening:

ERISA (29 USC § *et seq.*) was enacted in 1974. Effective January 1, 1985 the Retirement Equity Act of 1984[REA] added to the statute the requirement that all qualified pension plans provide automatic benefits to surviving spouses in the form of a survivor's annuity. (Pub.L. No. 98–397, 98 U.S.Stat. 1429 [1984]). Pursuant to REA, retirement income and deferred compensation plans must provide survivor benefits in the form of joint and survivor annuities to the spouses of participants (29 USC § 1055[a][2]). These mandated benefits provide income to the surviving spouse in the event of the death of the participant, regardless of whether the death occurs before or after retirement. In addition to mandating the survivor benefits, REA provides that such benefits cannot be waived by the partici-

pant or spouse unless, *inter alia,* the waiver is written, signed by the participant and his or her spouse before a plan representative or a notary, and designates a beneficiary who cannot be changed without spousal consent (29 USC § 1055[c][1], [2]).

Apart from the survivor benefit of REA, ERISA does not mandate that other benefits be provided to a participant's spouse. In fact, ERISA expressly prohibits alienation of benefits by the plan participant, except by a Qualified Domestic Relations Order (QDRO) issued by a state court in a matrimonial action under the State's domestic relations law (29 USC § 1056[d]). ERISA creates no substantive rights in the case of divorce, but only accommodates, by the provisions governing QDRO's, rights created by state matrimonial law.

*Sabad,* 825 A.2d at 695 (quoting *Edmonds,* 184 Misc.2d at 930–31, 710 N.Y.S.2d at 768–69).

A. Did the lower court abuse its discretion in awarding Wife attorney's fees where Wife based her challenge on the agreement's validity on allegations she knew to be false?

B. By awarding attorney's fees to Wife did the court ignore important public policy considerations with regard to the rights of parties to enter into settlement[?]

C. Did the court abuse its discretion by improperly considering significant parts of counsel's certification of fees in this case?

D. Was the court in error in not applying a credit due Husband by virtue of the value of the survivor's annuity against any attorney fee award?

Husband's brief at 4.

¶ 10 "The determination of marital property rights through prenuptial, postnuptial and settlement agreements has long been permitted, and even encouraged." *Sabad,* 825 A.2d at 686 (quoting *Laudig v. Laudig,* 425 Pa.Super. 228, 624 A.2d 651, 653 (1993)). Both prenuptial and post-nuptial agreements are contracts and are governed by contract law. *Laudig, supra.* Moreover,

a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. *See Busch v. Busch,* 732 A.2d 1274, 1276 (Pa.Super.1999), *appeal denied,* 563 Pa. 681, 760 A.2d 850 (Pa. 2000) (citing *Laudig, supra*). An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. *Paulone v. Paulone,* 437 Pa.Super. 130, 649 A.2d 691 (1994). We will not usurp the trial court's factfinding function. *Laudig, supra.*

*Sabad,* 825 A.2d at 686.

¶ 11 Having prevailed in federal court, Wife now claims that the doctrine of *res judicata* controls the outcome here and that in adherence to that doctrine, the trial court was obligated to follow the federal district court's decision irrespective of the later decision in *Sabad.* Although we do so with some reluctance, we must agree with Wife.

¶ 12 The question raised is essentially whether the federal declaratory judgment action, holding that Wife's waiver of rights to Husband's pension was void, is binding upon the Pennsylvania courts.

The doctrine of res judicata holds that a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action.... Where parties have been afforded an opportunity to litigate a claim before a court of competent jurisdiction, and where the court has finally decided the controversy, the interests of the state and of the parties require that the validity of the claim and any issue actually litigated in the action not be litigated again.

. . .

Application of the doctrine of res judicata requires that the two actions possess the following common elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties.

*Scott v. Mershon,* 441 Pa.Super. 551, 657 A.2d 1304, 1306 (1995) (quotation marks and citations omitted).

¶ 13 There is no question that there is an identity of parties in both the federal and state court actions. Wife filed the action in federal court and Husband defended the action. Thus, in order to determine whether *res judicata* is applicable to

the present case, we must determine whether there is a common identity of the thing sued upon. In turn, this requires us to determine precisely what was litigated in the federal court matter.

¶ 14 It is apparent that throughout the recent litigation Wife has primarily sought to void the PSA's provision in ¶ 10 in which she waived her rights to the marital portion of Husband's pension and 401(k) plans. This is evidenced by Wife's raising, in her answer and new matter to Husband's divorce complaint requesting that the state court approve the PSA, not only claims that would void the entire PSA under Pennsylvania law, i.e., non-disclosure, misrepresentation and duress, but also an issue seeking to specifically void ¶ 10, which contains the waiver of her rights in Husband's pension. Moreover, when the common pleas court allowed Wife to proceed only on the non-disclosure, misrepresentation and duress claims, in effect reserving the ERISA waiver issue for possible future resolution, Wife took the extraordinary measure of filing a contemporaneous declaratory judgment action in federal court rather than choosing to proceed first on the claims in state court.

¶ 15 A review of the pleadings and the federal court's decision also reveals that the federal court litigation related to the validity of the waiver in ¶ 10 of the PSA. Specifically, in her federal complaint, Wife requested the district court (1) to declare void those portions of the PSA that addressed Husband's "Qualified Plan Benefits," (2) to declare that the consent (waiver) form was invalid for failure to meet ERISA criteria, and (3) to declare what rights and interest she had in Husband's "ERISA Qualified Employee Benefits provided by his employer...." Complaint for Declaratory Judgment, at 4 (RR 68). In fact, Husband has acknowledged the above in his federal court pleadings. For exam-

ple, in his motion to dismiss Wife's federal complaint, Husband stated that Wife requested that the district court "set aside the agreement, citing the provisions of ERISA (29 U.S.C. Sec. 1132)." Husband's Motion to Dismiss Complaint, at ¶ 7 (RR 71). Perhaps more importantly, in granting Wife's motion for summary judgment in her declaratory judgment action, the district court "declare[d] that any purported waiver of [Wife's] rights to the benefits of her husband's pension and 401(k) plan are void and of no effect." Holz v. Holz, No. 99–4918, slip op. at 2, 2000 WL 191762 at *1 (E.D.Pa. February 3, 2000) (RR at 129). Thus, it appears that the matter litigated in district court was the validity of Wife's waiver of rights in the PSA to Husband's pension and 401(k) plans.

¶ 16 Consequently, the federal district court, a court of competent jurisdiction, issued a final, valid judgment on the merits in a suit between the same parties. See Scott, supra. Moreover, the Third Circuit affirmed. Foreign judgments are entitled to full faith and credit so long as the foreign court had jurisdiction and the defendant had the opportunity to appear and defend. Noetzel v. Glasgow, Inc., 338 Pa.Super. 458, 487 A.2d 1372 (1985).

¶ 17 Husband's response to wife's res judicata argument is primarily limited to an assertion that the district court's decision was wrong, both with respect to the fact that the district court possessed jurisdiction over the subject matter in Wife's federal action and with respect to the district court's conclusion that ERISA preempts state domestic relations law. In large part, these two points are interrelated. In asserting that the district court lacked subject matter jurisdiction, Husband contends that Wife's action in federal court was brought pursuant to the federal Declaratory Judgment Act (DJA), 28 U.S.C. § 2201–2202, which is not a juris-

dictional statute and cannot expand federal jurisdiction. Relying on *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), Husband asserts that the DJA merely "clarifies rights that a party may have in the event the matter is litigated in federal court." Husband's brief at 17. He also argues that the DJA action applied only to the survivorship benefits and that the federal court did not have jurisdiction to provide Wife with substantive property rights to his pension, which she can receive only through a QDRO issued by a state court.

¶ 18 In the first place, we would state that we believe *Sabad* correctly analyzed the law as it relates to this matter. In this respect, we believe that the underlying merits of Husband's arguments are, in fact, correct. That is, the waiver provisions of ERISA apply only to survivorship benefits, thus, the district court would possess jurisdiction under ERISA to decide only matters relating to the waiver of survivorship benefits. Unfortunately for Husband, Wife pursued relief in federal court, a court of concurrent jurisdiction, which saw the matter differently. Putting aside for the moment the merits of Husband's arguments, we note that Husband in fact leveled an attack upon the district court's subject matter jurisdiction in federal court but lost this attack. The district court's memorandum denying Husband's motion to dismiss states:

> [Wife] raises a federal question under ERISA, which broadly preempts state law. *See* 29 U.S.C. § 1144(a). Her claim does not involve the entry or terms of a qualified domestic relations order where state law would control. Consequently, we have subject matter jurisdiction under ERISA over [Wife's] declaratory judgment action challenging the validity of her waiver. *See Hurwitz v. Sher,* 982 F.2d 778 (2d Cir.1992).

*Holz v. Holz,* No. 99–4918, slip op. at 1 and 3, 1999 WL 1210835 at *1 (E.D.Pa. December 9, 1999) (RR at 88 and 89). Thus, it is evident that the district court's basis for jurisdiction rested on its conclusion that the waiver of pension rights, which are governed by ERISA, a federal statute, implicates a federal question. It follows then that since the subject matter was a federal question, a suit under the DJA was available to Wife.

¶ 19 As for Husband's contention that Wife's declaratory judgment action is applicable only to the survivor benefit, again under the reasoning of *Sabad*, it is apparent that declaratory relief would be available only as to the survivorship benefit. Nevertheless, the district court decision clearly went beyond the scope of survivorship benefits and addressed the waiver in its totality. In effect, Husband asks us to disregard a valid judgment of a court of competent jurisdiction because we disagree with the result reached there. Of course, we are not free to do so. *See Federated Dept. Stores v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In *Federated,* the Supreme Court stated that *res judicata* consequences of a final, unappealed judgment on the merits can not be "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Id.* at 398, 101 S.Ct. 2424. Moreover, "an erroneous conclusion reached by the court in the first suit does not deprive the *defendants* in the second action of their right to rely upon the plea of *res judicata* . . . ." *Id.* (quotation marks and citations omitted).

¶ 20 Accordingly, we are bound by the federal decision and must afford it full faith and credit. The federal judgment prohibits a relitigation of the issue. Therefore, we can not apply the decision in *Sabad,* which in our opinion correctly dis-

cusses the distinction between survivorship benefits with the applicable waiver requirements and the marital portion of the pension, which may be waived as was done here. Being compelled to follow the district court's holding, we conclude that Wife's waiver of her interest in the marital portion of Husband's pension and 401(k) plan is void. Therefore, we reverse the trial court's June 25, 2003 order relying on *Sabad* and remand the matter to the common pleas court for an equitable distribution determination of the marital portion of Husband's pension and 401(k) plan. The court may consider our discussion here, the prior award of the survivorship benefits already calculated, which now could be offset,[6] and any other evidence presented to it by the parties, including the initial division of other property pursuant to the PSA, since it is possible that Wife may have received other property in exchange for her waiver of her rights to Husband's pension and 401(k) plans.

¶ 21 Next, we turn to the counsel fees issues. Wife argues that the court abused its discretion by failing to award a much larger sum in view of the "unusual and protracted" nature of the case and her limited income due to a disability. Wife's brief at 29. In his cross-appeal, Husband argues that the court abused its discretion by awarding $20,000 in counsel fees to Wife because all the litigation that occurred since Husband filed his divorce complaint in 1999 stemmed from Wife's challenge to the PSA, which had been signed in 1988. Husband asserts that this matter should be considered a contract action rather than an equitable distribution case and that because Wife never proved

fraud, duress or misrepresentation she did not prevail and is not entitled to attorney fees. Husband also argues that public policy encourages parties to resolve their differences through agreements such as a PSA, but that Wife kept the resolution of the case in "legal limbo" for 15 years from the time of separation, despite Husband's attempt to finalize the divorce on numerous occasions. Husband also contends that Wife never submitted a fee agreement into evidence. He also asserts that many of the fees listed in Wife's counsel fees certification are not proper. As an example, Husband cites Wife's bills in the amount of $10,556 for the litigation in federal court, noting that this action took place before a different tribunal where fees were sought and denied. Husband also points to a bill for $2,100 for preparation for a hearing that was postponed and then cites a bill for $9,950 for preparation and attendance at the same but rescheduled hearing. Lastly, Husband contends that the court should have offset the amount Wife received for the $24,826 survivorship benefit with an amount for attorney fees pursuant to *Palladino, supra.*

Our ability to review the grant of attorney's fees is limited, and we will reverse only upon a showing of plain error. *Gilmore v. Dondero,* 399 Pa.Super. 599, 582 A.2d 1106, 1109 (1990). Plain error is found where the decision is based on factual findings with no support in the evidentiary [record] or legal factors other than those that are relevant to such an award. *Id.* When reviewing the grant of attorney's fees this Court must take into consideration,

---

6. *See Palladino v. Palladino,* 713 A.2d 676 (Pa.Super.1998) (stating that courts may apply either immediate offset method or deferred distribution method depending on the facts of the case). With regard to Wife's assertion that *Palladino* should not apply

here, we note that she provides no citation to support her position. On remand, the court may consider Wife's argument, but must abide by the Divorce Code's stated purpose of effectuating economic justice between the parties. *Id.*

the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*Id.* at 1109 (citing *LaRocca Estate,* 431 Pa. 542, 246 A.2d 337 (1968)).

*Diament v. Diament,* 816 A.2d 256, 270 (Pa.Super.2003).

¶ 22 The trial court indicated that Wife was seeking counsel fees and costs in the amount of $78,475 based on a $200 per hour rate set forth in Wife's counsel's certification. After citing *Perlberger v. Perlberger,* 426 Pa.Super. 245, 626 A.2d 1186 (1993),[7] and listing several factors to be considered by the court when awarding counsel fees, the court stated:

> The court has reviewed the relevant factors and the distributions received pursuant to the Agreement in this most unusual and protracted case. The court concludes based upon all the facts and circumstances that [W]ife is entitled to counsel fees in the sum of $20,000.

Trial Court Opinion, 6/25/03, at 2.

¶ 23 We are unable to discern from the court's opinion exactly what factors it found relevant and on what basis it awarded the counsel fees. Moreover, we are unable to determine the parties' re-spective financial situations or whether in light of Husband's assertions of improper billing there are discrepancies in Wife's counsel's certified statement. Therefore, because we are remanding the matter for further equitable distribution considerations, we vacate the present attorney's fees award and remand the matter to allow the court also to reconsider the amount of the attorney's fees to be awarded.

¶ 24 Reversed in part, vacated in part and remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

¶ 25 Judge Beck files a dissenting statement.

BECK, J., Dissenting.

¶ 1 I respectfully dissent. I do not agree with the majority that the federal district court "clearly went beyond the scope of survivorship benefits and addressed waiver in its totality." In my view the federal district court order in question, and the order affirming it in the Third Circuit Court of Appeals, addressed only the validity of Wife's waiver with respect to survivor benefits. Although the district court did not explicitly state that its order was limited in this manner, it is clear that Wife sought to negate her waiver by relying only on 29 U.S.C. § 1055(c)(2)(A)(iii). Further, in rendering a decision on the matter, the federal district court deemed Wife's waiver invalid based solely on noncompliance with § 1055(c)(2)(A)(iii), which addresses only survivor benefits. As a result, Wife was afforded relief in her federal action only to the extent of such benefits.

---

**7.** The court in *Perlberger* stated that "[t]he purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be 'on par' with one another." *Id.* at 1206.

¶ 2 This court's opinion in *Sabad v. Fessenden,* 825 A.2d 682 (Pa.Super.2003), confirms the limited effect of § 1055(c)(2)(A)(iii) on state domestic relations law, holding that the waiver restrictions announced therein are limited to survivor benefits alone. In my opinion the trial court properly interpreted the nature and effect of the federal courts' rulings and thereafter correctly applied the holding in *Sabad* to the facts of this case.

¶ 3 I would affirm the trial court.[8]

---

**8.** Based on our standard of review, I would find no error in the trial court's award of attorney's fees.